Argued January 10; affirmed July 2, 1946

IN RE FEEHELY'S ESTATE
# UNITED STATES NATIONAL BANK OF PORTLAND *v.* ALLEN ET AL.
(170 P. (2d) 757)

JAMES W. CRAWFORD, Judge.

*J. S. Middleton,* of Portland, for appellant.

*Chester W. Pecore,* of Portland, for respondents.

Before BELT, Chief Justice, and ROSSMAN, BAILEY, LUSK, BRAND and HAY, Justices.

ROSSMAN, J. This is an appeal by the United States National Bank of Portland, executor of the last will and testament of Louise M. Feehely, deceased, from an order of the circuit court entered June 20, 1945, which vacated an order of the same court entered April 6, 1945. The order last mentioned directed the executor to sell a parcel of real property situated in Portland so as to secure money with which to pay claims against the estate and discharge the expenses of administration. We shall term that property the income property. The order of June 20, 1945, being the one challenged by this appeal, was made upon a motion of Suzanne Allen, a minor, through her guardian, Alice Walter, and also by Alice Walter individually. Suzanne is a daughter and Alice Walter is a sister of the deceased. They are the respondents. The daughter is one of the beneficiaries of a trust to be established by the will of Mrs. Feehely, and Mrs. Walter is a contingent beneficiary of the trust. The vacating order, that is, the one entered June 20, 1945, recites:

"* * * the real property of decedent which the Executor by its petition seeks to sell, is the principal asset of the estate * * *; and it further appearing to the court, that the rents, income and profits from said real property have been and now are greatly in excess of any rate of income which may be derived from ordinary investments; and it further appearing to the court that the clear intent of the testatrix as set forth in her Last Will and Testament was and is that the said real property should not be sold, but should be preserved intact by the Executor and delivered and distributed to the testamentary Trustee at the close of the administration of her estate in this Court; and it further appearing to the court that the sale of said real property by the Executor as prayed in its petition would defeat the intent of the testatrix as

set forth in her Will; and it further appearing to the court, that it was and is the intent of testatrix, as provided in her Will that her debts, expenses of last illness, burial expenses, and the costs of administration of her estate, should be paid out of the income received by the Executor during the course of administration of her estate in this court; * * * ''

Therefore, the court vacated the previous order and ordered the executor "to pay the indebtedness of said estate, and the remaining costs of administration thereof, out of the funds derived from the rents of said real property * * *.''

The claims against the estate, including the costs of administration, approximate $5,000. At the time of her death the deceased possessed no money, and, hence, no cash came into possession of the executor at the time of its appointment. But by the time of the entry of the order now under attack the property, which the order of April 6, 1945, directed to be sold, had yielded to the executor approximately $5,000— enough to discharge all claims.

The issue before us is whether the income property should be sold so as to provide money for the payment of the aforementioned claims, or whether the income produced by that property, ($5,000) which amounts to enough to discharge the claims, is available for their payment. If the debts are paid with the money now in the possession of the executor, the property will not have to be sold.

Mrs. Feehely signed the will with which we are concerned March 5, 1941, and fourteen days later died. She was then 37 years of age. Suzanne, the only

child of the deceased, was then 10 years of age. The estate was appraised as worth $22,338.00. All of its assets can be classified into four divisions: (1) jewelry; (2) household furnishings; (3) home; and (4) the aforementioned income property.

The will made specific bequests and devises of the first three subdivisions of the property. The only item of the estate which was not specifically devised was the income property. We now turn to the first and sixth paragraphs of the will:

> "First: I do direct my Executor hereinafter named to pay, out of my estate and as soon as may be conveniently done after my decease, all of my just debts, together with the expenses of my last illness and burial and the cost of administration of my estate.

> \* \* \* \* \*

> "Sixth: If my beloved daughter, Suzanne Allen, shall survive me, I do give, devise and bequeath all of the rest, residue and remainder of my estate, real, personal and mixed and wheresoever situate, remaining undisposed of after the specific bequests contained in this my Will shall have been carried into effect, unto The United States National Bank of Portland (Oregon), a national banking association, in trust, however, upon the following terms and conditions:

> "(a) I do specifically invest my said Trustee with full power and authority to manage the properties of my estate, lease the same for a term not exceeding fifteen (15) years, \* \* \*.

> "(b) The income from my estate, after meeting all carrying and operating charges of the properties, and including any proper mortgage retirement requirements and the expenses of trust administration, I do direct my said Trustee to accumu-

late and to pay to my beloved husband, Tom Feehely, and to or for the account of my daughter, Suzanne Allen, for her support and maintenance and the cost of her education, to include primary and high school education as well as expenses in college, music, business school and/or otherwise; one-half of such income to be paid to my beloved husband, Tom Feehely, and the remaining one-half thereof to or for the account of my daughter, Suzanne Allen. I do direct that such payments to my husband, Tom Feehely, and to or for the account of my said daughter, Suzanne Allen, be made monthly. Should the share of income inuring to the benefit of my daughter, Suzanne Allen, be at any time or times in excess of her requirements, for the purposes above mentioned, to be determined in the sole and exclusive judgment of my said Trustee, then my Trustee is authorized to accumulate any excess income inuring to the share of my said daughter, and hold the same for her account, * * *.''

The income property consists of two adjacent lots which are improved with a one-story building. The property is deemed worth $15,000. It, therefore, constitutes all but $7,338 of the entire estate. It is producing a monthly rental of $265.80. The taxes for the year 1943-1944 were $561.48. The property is subject to a mortgage executed January 20, 1938, in the amount of $9,000. The note secured by the mortgage bears six per cent interest and is payable in semi-annual installments of $500. The unpaid balance in May of 1944 was $6,500. Evidently nothing was payable upon the obligation in the first two or three years.

We see from the foregoing that the only income-producing property which Mrs. Feehely owned at the time of her death was the aforementioned one-story building. By glancing again at her will it will be seen that Mrs. Feehely must have contemplated that the

income from the building would be continued after her death and that it would be available to the trustee. The will directs that one-half of the net income from the trust should be paid to the widower and that the other half should be expended "for the account of my daughter, Suzanne Allen, for her support and maintenance and the cost of her education, to include primary and high school education as well as expenses in college, music, business school and/or otherwise; * * *." Those and other paragraphs of the will, which sought to make provision in the event the daughter was overtaken with an expensive illness or other misfortune, clearly show that the mother expected that the trustee would have at its command a large income.

If the cash now in the executor's possession is used to discharge the claims, all debts will be defrayed and there will be no occasion to sell the income property. The daughter and Mrs. Feehely's sister do not wish to have that property sold.

The results which will follow (1) if the $5,000 now possessed by the appellant is not used to discharge the claims but is held for eventual distribution to the beneficiaries, and (2) if the $5,000 is used to discharge the claims, are indicated in the following tables:

1.

| | | |
|---|---|---|
| Mortgage | $ | 6,500.00 |
| Debts | | 5,000.00 |
| | $ | 11,500.00 |
| Value of income property | $ | 15,000.00 |
| | | 11,500.00 |
| Balance for Trust | $ | 3,500.00 |

### 2.

| | |
|---|---:|
| Value of income property | $ 15,000.00 |
| Cash now on hand | 5,000.00 |
| | $ 20,000.00 |
| Debts | 5,000.00 |
| | $ 15,000.00 |
| Mortgage | 6,500.00 |
| Net value of Trust | $ 8,500.00 |

If plan No. 1 must be employed, the two beneficiaries of the trust will each receive $2,500 and thereafter each will receive the net income produced by a trust res consisting of $3,500. The income property, which now yields about 25 per cent on its net value of $8,500, will have been sold and the purposes of the trust will have to be met out of the net income earned by the $3,500. Under plan No. 2 the beneficiaries will not receive the cash on hand, $5,000, but the trust res will retain the income property and the income in the future will be the same as Mrs. Feehely received during her lifetime.

■ As was said in *Kinney v. Uglow*, 163 Or. 539, 98 P. (2d) 1006:

> "The general rule is well established that when property is devised or bequeathed in trust to pay the income therefrom to a beneficiary for life or for a limited time, such beneficiary is entitled to payment of the income from the death of the testator, unless otherwise provided in the will."

That rule is, of course, applicable to this case.

By reverting to the portion of the will quoted in a preceding paragraph, it will be seen that the beneficiaries are entitled to the net income produced by

"the rest, residue and remainder of my estate." The $5,000 which the executor now possesses was produced by the estate as it now is; that is, before the payment of claims and administrative expenses had diminished its size. In other words, the $5,000 cash now in the hands of the executor was earned by the estate before it had been cut down to its residue. The appellant's brief itself says:

> "The 'rest, residue and remainder' of the estate of the decedent disposed of in Paragraph Sixth of the Will is that portion of her original estate which remains after payment of debts and expenses of administration."

The problem, therefore, confronts us whether the $5,000 cash which the executor possesses should be set aside as a fund for distribution to the beneficiaries of the contemplated trust or whether it is available for payment of the approved claims and expenses of administration.

*Proctor v. American Security and Trust Company,* 98 Fed. (2d) 599, passed upon the problem which this case presents. The author of the decision in that case was the Honorable Fred M. Vinson, who, a few days ago, became Chief Justice of the United States. The decision says:

> "It is fair to say that there are two irreconcilable rules which have grown up in this country in respect to the point involved. There is the general rule, supported by the decided weight of authority in this country, and likewise, the English cases, that the earnings upon testator's property, derived during the course of administration, used to pay costs of administration, debts and legacies, if not disposed of by the express terms of the will, are added to the residuary trust as part of its corpus. Then

there is the so-called Massachusetts rule, which crystallized in 1929, which holds that the earnings upon testator's property used to pay costs of administration, debts and legacies derived during the course of administration, if not disposed of by the express terms of the will, are distributable to the life beneficiary as income."

The Proctor decision analyzes both the general and the Massachusetts rules. There is, therefore, no occasion for setting forth another analysis of the authorities. Comprehensive annotations may be found in 70 A. L. R. 636, 105 A. L. R. 1194, and 135 A. L. R. 1322.

The form of the Massachusetts rule appears to have been influenced by earlier Massachusetts decisions which held that trustees in making up their accounts should credit to themselves all income earned by the estate during the probate period. Administration expenses are, of course, deemed capital outlays payable out of capital—not out of income. The Massachusetts rule assumed that the life tenant, to whom the income of an aliquot part of it is payable, is closer to the affections of the testator than the remainderman, to whom the trust *res* will be transferred upon termination of the trust. The general rule believes that the Massachusetts rule does not give effect to the meaning of the words "rest, residue and remainder". It claims that when a will says that the life tenant shall receive the income produced by a residuary trust, he is not entitled to income received by the executor from assets sold to provide money for the payment of claims, taxes, legacies and administration expenses. The Massachusetts rule holds that there should be paid to the life tenant the income received from items sold during administration, whereas the general rule holds that that income should be added to the corpus and

thus increase the size of the trust *res.* It deems income of that character as a part of the rest, residue and remainder of the estate.

The general rule found frequent use in New York until the legislative assembly of that state enacted a statute (New York Laws, 1931, c. 706) worded similarly to the Massachusetts rule. Restatement of the Law, Trusts, § 234, subd. g., favors the general rule. We quote:

> "To the extent to which the income received by the executor during the period of administration is derived from property which is subsequently used in paying legacies and discharging debts and expenses of administration and has not been applied to the payment of interest on such legacies, debts and expenses, the trustee is entitled to receive the same, but it should be added to principal and not paid to the beneficiary entitled to income."

We now return to the Proctor decision. It says:

> "We are unable to get away from the idea that when this testator set up these residuary trusts and directed that the 'rest, residue and remainder' of his estate should be transferred to such trusts and that the life beneficiaries thereof were to receive the 'net income' therefrom, he meant what he said. From the earliest decisions, as we read them, the 'rest, residue and remainder' of an estate meant all property not expressly disposed of by the will. After subtracting the costs of administration, debts, specific devises and legacies from the entire estate then existing, that which remains is the 'rest, residue and remainder.' Thereupon such property was transferred to the residuary trust, and it was the net income from such trust that such life beneficiaries were entitled to receive."

The Proctor decision embraced the general rule.

■ Before expressing our conclusion, we shall take note of the contention of the executor that the Uniform Principal and Income Act (9, U. L. A. 593) which, as adopted in this state, is §§ 74-101 to 74-114, O. C. L. A., is applicable to this case. According to § 74-102:

"This act shall govern the ascertainment of income and principal, and the apportionment of receipts and expenses between tenants and remaindermen, in all cases where a principal has been established with or, except as otherwise stated hereinafter, without the interposition of a trust; * * *."

The act nowhere uses the terms "executor" and "administrator". It contains at least no express language which applies its provisions to estates in the custody of a probate court. Although the glossary which forms a part of the act includes the word "trustee", it does not say that the word shall embrace the personal representative of a decedent. Common parlance does not include within the meaning of the word "trustee" an executor or an administrator. Uniform acts are prepared with painstaking care. The one to which we are now addressing ourselves came before the National Conference of Commissioners on Uniform State Laws four successive years before it was approved. It is fair to assume that each word in the act was deliberately chosen and was thought to express the exact idea which the commissioners wished to convey. The Commissioners' Prefatory Note (9 U. L. A. 593) nowhere gives any indication that the commissioners were dealing with estates under probate. To the contrary, it says: "Considerable demand for legislation on this subject came from several sources, particularly from trustees who were embarrassed in discharging their fiduciary duties." We do not believe that the act is applicable to estates under probate.

■ We think that the general rule gives effect to the language of the will and that we are, therefore, required to adopt it: § 2-216, O. C. L. A. When a testator provides that a given beneficiary shall receive all or a fraction of the income yielded by the residue of his estate, he does not wish the beneficiary to receive any part of the income earned by assets which will never become a part of the residue. The income received during administration from those assets, if not otherwise disposed of by the will, becomes residue and should be added to the corpus which at the close of administration will become the trust fund. We adopt the general rule.

■ In the present instance, it is manifest that most of the $5,000 cash now possessed by the executor was earned by assets which would not have remained a part of the trust fund had the income property been sold promptly so as to provide money with which to pay the claims. At the time of Mrs. Feehely's death, if we understand the facts, nothing had been paid upon the mortgage, and hence the estate's equity in the income property was only $6,000. Accordingly, if at that time the property had been sold to provide $5,000 for the payment of claims, the estate would have received only $1,000 more than the total of the claims and the mortgage. In other words, the residue would have been $1,000. If that calculation is applicable, it is evident that very little of the $5,000 income now possessed by the executor was earned by the residue. Upon the other hand, when the attacked order was entered the mortgage had been reduced to $6,500, and therefore if a sale had then occurred the residue would have been $3,500. Even at that figure less than one-half of the income was earned by residue. The briefs of the parties

do not indulge in these analyses, and seemingly nothing useful will be gained in trying to determine from the facts before us the specific part of the money possessed by the executor which was earned by "residue" and the other part which was earned by assets which really belonged to the claimants. The parties deem the $5,000 of income as a unit, and make its status depend upon whether the general or the Massachusetts rule is preferable. But, reverting to the facts, it is apparent that at the time of her death Mrs. Feehely's estate had very little for the trust fund. The forbearance of the creditors has enabled the income property to produce the fund.

Apart from the fact that Rhode Island employs the Massachusetts rule, *Industrial Trust Co. v. Harrison,* 67 R. I. 131, 21 Atl. (2d) 254, 135 A. L. R. 1312, presented the same problem as that before us. The principal item of the estate involved in that case was the deceased's interest in the Sanitube Company, worth $60,000 and earning 16 per cent upon that valuation. In order to secure funds for the payment of debts, legacies and administration expenses, the executors sold everything which belonged to the estate except the Sanitube stock, but still owed $10,000. After the sales were made they possessed nothing except $10,000 cash received as dividends during administration from the Sanitube Company, the shares of that company and miscellaneous items worth $800. Under the Massachusetts rule, the dividends belonged to the beneficiaries of the residuary trust which the executors were required to establish presently. Therefore, it appeared necessary to sell the Sanitube Company stock. Due to circumstances which we need not relate, the stock could not be sold for more than $45,000 and that sum

could not produce the yield necessary to the trust purposes. In holding that the $10,000 of claims should be paid from the $10,000 of dividends received during administration, the court said:

"While we do not feel that this is a case for application of the rule of apportionment generally, or that the will permits the executors to apportion in their discretion as if they were dealing with the assets of a trust estate already set up, nevertheless, we are of the opinion that the fees in question should be paid by the executors from the accumulated income, as such, because of the necessities of the case and in order to give reasonable effect to the testator's dominant intention. We recognize that such payment from income is not ordinarily made, and that before it is permitted either an express or implied intent to that effect should be found in the will. There is no such express direction in the will before us; but, in our judgment, it is reasonably to be implied in view of the nature of the testator's estate and of the provisions of his will. To come to a different conclusion would lead to an unreasonable sacrificing of the Sanitube Company's stock and, in effect, nullify said will.

"The testator must have known that the only asset of his estate which could produce income of any large amount would be the stock of the Sanitube Company. The reasons advanced by the widow and by the representative of the minor children for allowing such a payment of fees by the executors, seem to us sound under all the facts appearing in evidence when taken in connection with the testator's plain intent as expressed in his will. The Boardman case, supra, is authority for the holding that the testator's indebtedness may be paid from income rather than from principal if the facts warrant, and if the testator's intent to that end may reasonably be implied from the will. We find that to be the situation in the instant case. We

therefore answer the first question submitted in the affirmative.''

The decision just reviewed could readily warrant us in holding that the claims should be paid out of the cash which the executor possesses. Besides believing that the Industrial Trust Company decision faithfully carried into effect the testator's wishes, as expressed in his will, we think that we ought to deem the $5,000 cash which the executor possesses as a unit and not seek to determine what part, if any, of that sum was earned by money which might eventually become residue. Sufficient data is not before us to enable the calculation to be made without a considerable amount of speculation entering into the process. It suffices to say that if the sale had been promptly made there would have been very little, if any, residue for the trust.

Under the general rule, the $5,000 cash which the executor now possesses constitutes a part of the rest, residue and remainder of Mrs. Feehely's estate. It is, therefore, available for the payment of the claims. That being true, the circuit court did not err when it entered its order of June 20, 1945. That order is affirmed.