**MALONEY, Collector of Internal Revenue, v. GLOVER et al.**

No. 11732.

United States Court of Appeals Ninth Circuit.

Jan. 13, 1949.

---

9 See Section 213(c), Revenue Act of 1939, 26 U.S.C.A. Internal Revenue Acts to Date, page 1176.

Theron Lamar Caudle, Asst. Atty. Gen., Helen R. Carloss, Robert N. Anderson, Melva M. Graney and S. Dee Hanson, Sp. Assts. to Atty. Gen., Henry L. Hess, U. S. Atty., of Portland, Or., and Thomas R. Winter, Sp. Atty, Bureau of Internal Revenue, of Seattle, Wash., for appellant.

Carl E. Davidson and Charles P. Duffy, both of Portland, Or., for appellee.

Before MATHEWS, STEPHENS, and HEALY, Circuit Judges.

HEALY, Circuit Judge.

Appellees are the trustees of a trust created by the will of Sarah E. Carrier, referred to hereafter as the decedent. They sued appellant, the collector of internal revenue for the district of Oregon, to recover taxes alleged to have been illegally exacted. These were taxes upon 15/20ths of the income of decedent's estate for the taxable years 1940, 1941 and 1942, and paid by the administratrices during the course of administration.

The statute involved is 26 U.S.C.A. § 162(a). So far as material it provides that the net income of an estate shall be computed on the same basis as in the case of an individual, except that there shall be allowed as a deduction "any part of the gross income, without limitation, which pursuant to the terms of the will * * * creating the trust, is during the taxable year paid or permanently set aside for the purposes and in the manner specified in section 23(o), or is to be used exclusively for religious, charitable, * * * or educational purposes * * *"

The trial court held, in effect, that the entire income of the decedent's estate was during the years in question deductible under the terms of this statute.

The facts of the case are not in dispute. By her will the decedent made a number of specific bequests to named individuals and bequeathed the residue of her estate to designated charitable, religious and educational institutions, as follows: 5/20ths thereof directly to those institutions, and the remaining 15/20ths to appellee trustees on the following terms: "* * * to be held by them in trust for ten years after my decease, and safely invested by them and the income derived therefrom to be devoted to the care and maintenance of such blood relatives of myself and of my deceased husband, the late Burton E. Carrier, not farther removed than first cousins, who in the judgment of said trustees are in need of financial assistance, if any there should be, and in such sums as may seem wise to said trustees, it being my direction that the corpus of said trust fund be kept intact and such interest and income derived therefrom as is not used for the purposes above indicated to be added thereto and upon the expiration of said trust period of ten years after my decease said trustees divide all of the funds in their possession as such trustees, including the corpus of said trust fund and accumulated interest and income derived therefrom and not otherwise disposed of under the authority herein conferred, into four parts, of equal value, and execute such instruments as may be required by the laws of Oregon to transfer the same in equal portions to the following institutions, [naming them]."

The institutions named in the residuary clause are concededly of the character defined in § 23(o). For the sake of brevity the individuals comprising the class of blood relatives spoken of in the residuary clause will be referred to as the "intermediate" beneficiaries. Income payable to them was not, of course, deductible in computing the estate's income tax.

From the date of decedent's death in January 1940 and until March of 1943 her

872

estate was in process of administration. During that period no payments were made to any of the intermediate beneficiaries, although some of them made requests for aid. The trustees did not in fact commence to function until the estate was finally distributed in March of 1943. They thereafter, and during each of the years 1943 to 1946 (the years elapsing prior to the filing of the suit) made payments to certain of the intermediate beneficiaries in total annual amounts substantially less than the annual net income of the trust.

The trustees' position is that during the course of administration (before the trust actually became operative) none of the intermediate beneficiaries had, or could thereafter have, any right to the income accumulated during administration; that the accumulated income was part of the residue of the estate and automatically became a part of the corpus of the trust upon its distribution to the trustees, hence was permanently set aside or was to be used exclusively for the charitable purposes specified in the will.

▮▮▮ We are unable to agree that this was so. Under the law of Oregon, which must be looked to here, the right to income of the intermediate beneficiaries is to be determined by reference to the terms of the will, the controlling factor being the intention of the testator. The local rule is that when property is devised in trust to pay the income therefrom to a beneficiary, the latter is entitled to payment of the income from the death of the testator *unless otherwise provided in the will.* Kinney **v.** Uglow, 163 Or. 539, 98 P.2d 1006.[1]

The will here contains no provision depriving the intermediate beneficiaries of the income accruing during the course of administration, nor does a study of the instrument as a whole indicate that such was the testamentary intent. It indicates, we think, the contrary. The intention of the decedent is reasonably clear in the following respects, (1) that the income from the trust property was to be "devoted to the care and maintenance of" this class of intermediate beneficiaries, they being, so far as concerns the trust income, the primary objects of the testator's bounty; (2) that to the extent needful these individuals were to be paid the income received for the full period of ten years beginning with the testator's death; and (3) that at the end of the period—not before—such part of the income as had not been paid to them was to be added to the corpus of the trust, and the whole distributed to the designated charitable organizations.

The local rule, therefore, compels the conclusion that the income accruing from the time of decedent's death from the property bequeathed in trust was available to the intermediate beneficiaries and continued to be available so far as necessary to satisfy their needs throughout the whole of the ten-year period. The extent to which the income would be devoted to the needs of this class was, and indeed still remains, a matter purely of speculation. Perhaps little of it may be so devoted, but it is entirely possible that the whole of it will be. The ultimate beneficiaries, namely, the charitable institutions designated in the will, may get none of it.

▮▮ There was thus, in computing the estate's income tax, no basis in § 162(a) for deducting any part of the income from the trust property accruing during the course of administration. None of it was or could be during the taxable year or years paid or permanently set aside for the purposes specified in § 23*(o)*. Nor could it be known whether any, or how much, of the income would be used exclusively for any of the charitable purposes specified in § 162(a).

Reversed.

MATHEWS, Circuit Judge, concurs in the result.

---

[1] The later case of In re Feehely's Estate, 179 Or. 250, 170 P.2d 757, 166 A.L.R. 420, reaffirms this rule.